In the Matter of **PENN CENTRAL TRANSPORTATION COMPANY,** Debtor.

In re **FIDELITY BANK PETITION.**
No. 70–347.

United States District Court,
E. D. Pennsylvania.
Nov. 17, 1971.

Blank, Rome, Klaus & Comisky by Gilbert Stein, and Gerald Broker, and John F. Bomster, Philadelphia, Pa., for the Trustees, Penn Central Transportation Co.

Morgan, Lewis & Bockius by John H. Lewis, Jr., and John N. Schaeffer, Jr., Philadelphia, Pa., for the Fidelity Bank.

Duane, Morris & Heckscher by Williamson P. Donald, Philadelphia, Pa., for Bankers Trust Co. and Manufacturers Hanover Trust Co.

Dechert, Price & Rhoads by Matthew Broderick, Philadelphia, Pa., for Penn Central Co.

Drinker, Biddle & Reath by Jack B. Justice, Philadelphia, Pa., for Chase Manhattan Bank.

Tate & Ervin by W. Bourne Ruthrauff, Philadelphia, Pa., for Richard Joyce Smith, trustee, New York, New Haven & Hartford Railroad.

Fox, Rothschild, O'Brien & Frankel by Nochem S. Winnet, Philadelphia, Pa., for First National City Bank of New York.

Ballard, Spahr, Andrews & Ingersoll by Richardson Blair, Philadelphia, Pa., for Morgan Guaranty Trust Co.

In Proceedings for the Reorganization of a Railroad

## OPINION AND ORDER NO. 496

FULLAM, District Judge.

The Debtor is the lessee of the property of the New York and Harlem Railroad Company, under a 401-year lease executed in 1873. Under the terms of the lease, the lessee has the right to sell such portions of the demised premises as are not needed in railroad operations, without accounting for the proceeds until the end of the lease.

The Trustees of the Debtor are considering possible sales of various properties in the City of New York, including properties demised under the New York and Harlem lease. After extensive public advertisement, bids have been received, and are now being studied.

The Fidelity Bank has, with the consent of this Court, filed a derivative action in this District (Civil Action No. 71–2592 consolidated with the reorganization proceedings) seeking, *inter alia*, to have the 1873 lease declared null and void. The same plaintiff has also filed an action in the Supreme Court of the State of New York, in which the named defendants are the New York and Harlem Railroad Company and various of its officers and directors. The Trustees are not named parties to that action. The issue before this Court is whether the New York action should be permitted to proceed.

The Debtor owns 95% of the outstanding stock of the New York and Harlem Railroad Company, and all of the officers and directors of the New York and Harlem are also officers of the Debtor. The New York action seeks the following relief:

1. To enjoin the defendants from conveying the properties leased to the Debtor except upon compliance with Section 909 of the New York Business Corporation Law (requiring consent of shareholders);

2. To enjoin the defendants from conveying these properties unless provision is made to segregate the proceeds for the account of the New York and Harlem;

3. To set aside any conveyances heretofore made; and

4. "Such other relief as may be deemed just and proper."

Neither the Debtor nor the Trustees have been named defendants, as noted above. Whether they should be classified as necessary parties to that litigation is not before me. It should be noted, however, that the definition of a necessary party, under New York Civil Practice Law and Rules § 1001(a), includes anyone who "might be inequitably affected by a judgment in the action." If the Trustees and the Debtor are deemed to be necessary parties in the New York action, the issue before this Court is whether permission should be granted to make them parties to that action. It is conceded by all concerned that this Court does have jurisdiction to render such a determination.

If, on the other hand, as Fidelity apparently contends, the Trustees and the Debtor are not necessary parties to the New York action, then the issue is whether the results sought to obtained

by the plaintiff in the New York action, and which could be obtained without naming the Trustees and the Debtor as parties, would be likely to invade property interests of the Debtor's estate, or unduly interfere with its reorganization. A related issue is whether the estate should be required to incur the risks of not participating in the New York action.

Fidelity relies principally upon the case of Callaway v. Benton, 336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553 (1949) for the proposition that this Court has no jurisdiction to enjoin the New York proceeding. In *Callaway*, a railroad in reorganization was lessee under a 100-year lease, renewable for like terms in perpetuity. *See* Benton v. Callaway, 165 F.2d 877, 885, n. 2 (5th Cir. 1948). One of the alternatives provided in the final plan of reorganization of the railroad involved the purchase of the reversionary interest by the debtor from the lessor. A state court had held that, under state law, unanimous consent of the shareholders of the lessor was required in order to carry out such a sale, and had entered an injunction prohibiting the sale. The reorganization court enjoined further proceedings in the state court and voided the injunction. The Supreme Court held (two Justices dissenting) that "under the narrow facts presented here" the reorganization court was in error. In holding that the state court had jurisdiction to determine the issues of state law involved, and that the reorganization court exceeded its jurisdiction in interfering with the state litigation, the Court pointed out that the reorganization plan had been finally approved, and constituted merely an offer to the lessor to sell the reversion; that the bankruptcy court had no jurisdiction over the internal affairs of the lessor; that the state court injunction would not impede the carrying out of the reorganization plan according to its terms, nor would it interfere with continuation of rail service; that while the reorganization court undoubtedly had jurisdiction over the leasehold interest, as "property of the Debtor," the reversionary interest was not within the jurisdiction of the bankruptcy court. The Court also noted, although without specifying the significance thereof, that the lessor in that case could not have been brought within the reorganization proceedings, since it was not owned or controlled by the Debtor.

The distinctions between *Callaway* and the present situation are clear: The lessee's right to sell the demised premises and to retain the proceeds until the end of the lease, a period of over 300 years, is obviously a substantial property interest of the Debtor; and the New York action, which would, if successful, frustrate that right, constitutes a claim against the Debtor's property which the reorganization court may properly enjoin. Moreover, this is a reorganization in progress, rather than one which is completed except for carrying out an approved plan. In *Callaway*, the actual dispute was between shareholders of the lessor, as to whether a minority could successfully block the proposed sale. In the present case, while some aspects of the alleged dispute may be similar, the dispute also involves, necessarily, the Debtor's rights of sale under its lease. Moreover, with respect to issues involving merely the rights of shareholders of the lessor, it is significant in the present case that the Debtor owns 95% of lessor's stock, and that all of the officers and directors of the lessor are officers of the Debtor. In *Callaway*, there was no threatened interference with formulation of a plan of reorganization, or execution of the plan (either of the two possible results of the state litigation would have conformed to the reorganization plan); in the present case, plaintiffs are seeking sequestration of proceeds of the sale.

The case of Texas & N.O. Railroad Company v. Phillips, 211 F.2d 419 (5th Cir. 1954), cert. denied, 348 U.S. 913, 75 S.Ct. 293, 99 L.Ed. 716 (1955), has been cited for the proposition that this Court lacks jurisdiction over the reversionary interest of the lessor. There, a railroad

had leased a sulphur plant to a tenant for a term of 10 years, with option to buy. The tenant became bankrupt. After the railroad had tried unsuccessfully to cancel the lease (*see* 196 F.2d 692 [5th Cir. 1952]), the trustee in bankruptcy sought to obtain specific performance of the option to purchase. The referee refused to dismiss the petition, the district court upheld the referee, but the Court of Appeals reversed, holding that the bankruptcy court did not have jurisdiction to grant specific performance of the option in a summary proceeding. The court took the position that the reversionary interest was not in the possession of the bankrupt on the date of bankruptcy (but did not discuss the fact that the option to purchase was owned by the debtor on the date of bankruptcy). The real basis for the court's holding was its conclusion that specific performance is an *in personam* remedy, requiring personal jurisdiction over the proposed defendant, and requiring a plenary action, unless the defendant submits to the bankruptcy court's summary jurisdiction.

It may be doubted that this bankruptcy decision from another circuit would have much precedential value in a railroad reorganization proceeding under Section 77. In any event, the issue here is not whether the Trustees could, in the reorganization court, obtain specific performance of a purchase option, but whether this Court has jurisdiction to stay a state proceeding which could have a substantial adverse effect upon existing rights of the Trustees.

I conclude that this Court does have jurisdiction to enjoin the New York proceeding and that the proper exercise of discretion requires that the state proceeding be enjoined.

Bids for the New York properties were received on October 15, 1971, and are presently being evaluated by the Trustees and their consultants. One of the conditions imposed when the United States government guaranteed $100,-000,000 in loans under the provisions of the Emergency Rail Services Act of 1970, was that the Trustees make every reasonable effort to liquidate non-rail assets of the Debtor. No sales can be carried out without the approval of this Court. If the Trustees do decide to proceed with some or all of the proposed sales, it would obviously be desirable for this Court to have before it all of the various possible reasons for rejection or approval of such sales, and to have some control over the timing of the resolution of such questions.

The merits of the claims asserted by Fidelity in the New York litigation can be fully explored, and the legal rights of the parties vindicated, in this Court as well as any other. Efficient administration of justice would obviously best be served by having all of the issues raised by Fidelity, both in the New York action and in the petition against the Trustees in this Court, resolved in the same litigation.

Accordingly, Fidelity will be required to present its claims in the reorganization court, in conjunction with the petition already filed against the Trustees.